[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14726

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 30, 2012
JOHN LEY
CLERK

D.C. Docket Nos. 1:10-cv-20509-KMM,
08-01266-RAM


ALDERWOODS GROUP, INC.,
OSIRIS HOLDING OF FLORIDA, INC.,
NORTHSTAR GRACELAND, LLC,

Plaintiffs - Appellants,


versus


REYVIS GARCIA,
RAMONA JOHNSON,
MERCEDES WOODBERRY,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 30, 2012)

Before TJOFLAT and MARTIN, Circuit Judges, and DAWSON,[*] District Judge.

TJOFLAT, Circuit Judge:

The threshold issue this appeal presents is whether a bankruptcy court in one federal district has jurisdiction to determine whether a debt was discharged in a bankruptcy case litigated in another federal district. We hold that the court lacks jurisdiction and therefore do not reach the other issues the appeal presents.

I.

A.

The debt at issue consists of claims of tort liability possessed by relatives of people buried in a Miami, Florida cemetery, known as Graceland. The claims are set out in the class action complaint filed in the Circuit Court for Miami-Dade County, Florida ("State Court") by Reyvis Garcia, Ramona Johnson, and Mercedes Woodberry ("Creditors") in March 2008.[1] The defendants are Alderwoods Group, Inc., Osiris Holding of Florida, Inc., and Northstar Graceland, LLC ("Debtors"),

---

[*] Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, sitting by designation.

[1] The class action complaint was Creditors' fourth amended complaint. Creditors filed their first complaint in December 2004. The allegations of that complaint and of the second and third amended complaints are not pertinent here.

Graceland's owners.[2]  Creditors allege that Debtors are liable to them and the

members of their class for damages because, due to inadequate record keeping,

Debtors are unable to locate upon request the grave sites of family members or

close relatives buried in Graceland.  This liability is based on the common law

theories of tortious interference with dead bodies, intentional or reckless infliction

of emotional distress, and gross negligence under Florida tort law.

Debtors contend that Creditors' claims were discharged in a Chapter 11

bankruptcy case in the United States Bankruptcy Court for the District of

Delaware ("Delaware Bankruptcy Court"), a case they initiated on June 1, 1999,

when they petitioned that court for Chapter 11 relief ("Chapter 11 Case") under

the Bankruptcy Code.[3]  On October 21, 1999, the Delaware Bankruptcy Court

entered an order establishing bar dates for filing proofs of claim and approving the

notice of the bankruptcy proceedings to be mailed to all known creditors and

---

[2]  Alderwoods Group, Inc. ("Alderwoods") was previously known as Loewen Group International, Inc.  It and 816 Alderwoods subsidiaries—including Osiris Holding of Florida, Inc. ("Osiris")—operated cemeteries or other funerary facilities in dozens of states and were the debtors in the Chapter 11 bankruptcy cases referred to infra.  These cases were consolidated and jointly administered under case number 99-01244 (PJW) in the Bankruptcy Court for the District of Delaware.  As indicated infra, we refer to all of the cases as the "Chapter 11 Case."

Osiris purchased Graceland in 1991.  Four years later, Alderwoods acquired Osiris.  On December 19, 2006, Northstar Graceland, LLC ("Northstar") acquired Graceland from Osiris. Northstar is included in the term Debtors even though it was not a debtor in any of the consolidated Chapter 11 cases referred to in note 2, supra.

[3]  See 11 U.S.C. § 101 et seq.

3

published for the benefit of all unknown creditors (the "Bar Date Order").[4]  Later

that October and in November 1999, Debtors published the notice in the Wall

Street Journal, the New York Times, and USA Today.

On December 5, 2001, the Delaware Bankruptcy Court entered an Order

confirming Debtors' plan of reorganization ("Confirmation Order") and fixing

January 2, 2002, as the plan's "Effective Date."  The Confirmation Order

discharged all claims against Debtors, including unknown claims such as those

Creditors asserted in the State Court case, that arose on or before the Effective

Date and provided that the court retained jurisdiction over the reorganization after

the Effective Date.

B.

On April 7, 2008, Debtors filed a "complaint" against Creditors in the

United States Bankruptcy Court for the Southern District of Florida ("Florida

Bankruptcy Court").  The complaint invoked that court's jurisdiction under 28

U.S.C. §§ 157 and 1334[5] and sought (1) a declaration[6] that the claims Creditors

---

[4]  The Bar Date Order provided that any creditor that did not file a proof of claim before the bar date could no longer assert its claim against Alderwoods or its subsidiaries.

[5]  Section 157 states, in pertinent part:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.  Bankruptcy judges may

4

were attempting to litigate in State Court were discharged in the Chapter 11 Case,

as of January 2, 2002, pursuant to § 1141 of the Bankruptcy Code,[7] and (2) an

order, entered pursuant to § 524 of the Bankruptcy Code,[8] enjoining Creditors

from pursuing their case in State Court.[9]

---

> hear and determine all cases under title 11 and all core proceedings arising under
> title 11, or arising in a case under title 11 . . . .

28 U.S.C. § 157(a)–(b)(1).
      Section 1334 states, in pertinent part: "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).

   [6] The complaint invoked the Declaratory Judgement Act, 28 U.S.C. § 2201, which provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

   [7] Section 1141 states, in pertinent part: "Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation . . . ."  11. U.S.C. § 1141(d)(1)(A).

   [8] Section 524 states, in pertinent part:

> A discharge in a case under this title voids any judgment at any time obtained, to
> the extent that such judgment is a determination of the personal liability of the
> debtor with respect to any debt discharged . . . .
>
> . . . .
>
> After notice and hearing, a court that enters an order confirming a plan of
> reorganization under chapter 11 may issue, in connection with such order, an
> injunction in accordance with this subsection to supplement the injunctive effect
> of a discharge under this section.

11 U.S.C. § 524(a)(2), (g)(1)(A).

   [9] Compl. for Declaratory Relief at 5–6, <u>Alderwoods Grp. v. Garcia</u>, No. 08-1266-BKC-RAM-A (Bankr. S.D. Fla. Apr. 7, 2008).  In addition to damages and injunctive relief, the

5

In response, Creditors moved the Florida Bankruptcy Court to dismiss the Debtors' complaint for lack of subject matter jurisdiction or, in the alternative, to abstain from exercising jurisdiction and/or to remand the case to state court.[10]  The Florida Bankruptcy Court heard Creditors' motion and denied it, concluding that it had subject matter jurisdiction over the dispute and that neither abstention nor remand was required or appropriate.

On June 9, 2008, Creditors answered Debtors' complaint.  Creditors alleged that the the notice to unknown creditors published in the Chapter 11 Case pursuant to the Bar Date Order was constitutionally inadequate; therefore, their claims had not been discharged.

After the pleadings closed, the parties filed cross-motions for summary judgment.[11]  Addressing Creditors' assertion concerning the notice to unknown

complaint sought "such other and further relief as the Court deems just and proper."  Id. at 6.

[10]  The gist of the Creditors' motion was that the Florida Bankruptcy Court could not exercise jurisdiction over what was effectively an affirmative defense of discharge masquerading as a request for declaratory relief—in essence, that Debtors were asserting no federally created right.  Debtors, in turn, argued that the Chapter 11 Case discharge injunction was a matter of federal bankruptcy law and that, in determining whether Creditors' State Court action was barred by that discharge, the Florida Bankruptcy Court was properly exercising federal jurisdiction.

[11]  At the hearing held on the motions for summary judgment, Creditors' counsel apparently conceded that the State Court claims were subject to discharge provided that adequate notice of the Chapter 11 Case had been provided.  Presumably because of this concession, the Florida Bankruptcy Court framed the issues before it as whether Creditors' requested injunctive relief was a claim subject to discharge and whether the notice published in the Chapter 11 Case provided adequate notice as to all of Creditors' claims.

6

creditors, the Florida Bankruptcy Court ruled that the publication of the notice was inadequate.  The publication failed to meet the standard set by Fifth Amendment's Due Process Clause, as explicated by Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), because it was not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action."  Alderwoods Grp. v. Garcia, No. 08-1266-BKC-RAM-A, slip op. at 16 (Bankr. S.D. Fla. Nov. 25, 2009) (quoting Mullane, 339 U.S. at 314, 70 S. Ct. at 657) (emphasis omitted) (internal quotation marks omitted).  In the court's view, the publication failed to meet this standard because the notice did not contain the name of the Graceland cemetery and its operator at the time the Chapter 11 Case was pending; moreover, the notice was not published in Miami's local newspaper.[12]  The Florida Bankruptcy Court therefore denied Debtors' motion for summary judgment and granted Creditors' motion, declaring that the claims Creditors were prosecuting in State Court had not been discharged in the Chapter 11 Case.

---

[12]  The Bankruptcy Court reasoned that because "prior to the Effective Date of their plan of reorganization, [Debtors] knew enough about record-keeping problems and lost burials, or at the very least, the difficulties it was experiencing locating grave-sites at Graceland," Debtors could "reasonably expect future problems and future claims from family members like [Creditors] here."  Alderwoods Grp. v. Garcia, No. 08-1266-BKC-RAM-A, slip op. at 27–28 (Bankr. S.D. Fla. Nov. 25, 2009).  The Florida Bankruptcy Court found the notice inadequate in that Creditors could not have known from reading the notice that it referred to Graceland.

C.

Debtors appealed the court's decision to the United States District Court for the Southern District of Florida,[13] presenting four arguments for reversal: (1) One of the Creditors was a nonresident alien at the time the Chapter 11 Case was being heard and therefore had no right to due process; (2) the published notice comported with due process; (3) even if the notice did not meet Mullane's due process standard, Creditors suffered no prejudice; and (4) the State Court claims should be considered discharged because the notice contained Debtors' names. The District Court rejected all four arguments and affirmed. The District Court thereafter denied Debtors' motion to alter or amend judgment.[14] See Fed. R. Civ. P. 59(e). Debtors now appeal the District Court's judgment and the order denying Rule 59(e) relief.[15]

---

[13] The District Court had appellate jurisdiction pursuant to 28 U.S.C. § 158(a): "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . entered in cases and proceedings referred to the bankruptcy judges . . . ."

[14] In its Rule 59(e) motion, Debtors argued that the nonresident alien Creditor—who lived in Cuba at the time of the Chapter 11 Case—did not enjoy the right of due process and thus was not entitled to adequate notice of the bankruptcy proceeding.

[15] We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1), which gives the courts of appeals appellate jurisdiction over "final decisions, judgments, orders, and decrees entered" by the district courts in exercise of their appellate jurisdiction under 28 U.S.C. § 158(a). "The plain meaning of this provision grants this court jurisdiction of appeals only where the district court exercised appellate jurisdiction from a decision by a bankruptcy judge, not where the district court exercised original jurisdiction." Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1547 (11th Cir.

In its brief to this court, Debtors raise four issues: (1) whether the Florida Bankruptcy Court had subject matter jurisdiction to consider Creditors' due process defense; (2) whether the District Court erred in denying Debtors' motion to alter or amend judgment; (3) whether the Florida Bankruptcy Court erred in granting Creditors summary judgment; and (4) whether the Florida Bankruptcy Court erred in denying Debtors' motion for summary judgment. We do not address these issues because we conclude that the Florida Bankruptcy Court lacked jurisdiction to entertain Debtors' complaint for declaratory relief.

## II.

### A.

The Bankruptcy Code provides that "the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation" and that "after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors." 11 U.S.C. § 1141(c), (d)(1)(A). Moreover, the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act,

---

1996). Of course, "[a] court of appeals' jurisdiction over a district court's review of a bankruptcy court order can only be based on a proper exercise of the district court's jurisdiction." In re Vlasek, 325 F.3d 955, 960 (7th Cir. 2003). We nevertheless also have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

9

to collect, recover or offset any such debt as a personal liability of the debtor." Id. § 524(a)(2). "[The] court that enters an order confirming a plan of reorganization under chapter 11 may issue, in connection with such order, an injunction in accordance with this subsection to supplement the injunctive effect of a discharge under [§ 524]." Id. § 524(g)(1)(A). Indeed, the Confirmation Order so provided: "as of the Effective Date, all entities that . . . hold a Claim or other debt or liability that is discharged . . . are permanently enjoined from . . . commencing or continuing in any manner any action . . . against the Debtors." In re Loewen Grp. Int'l, Jointly Administered Case No. 99-1244 (PJW), slip op. at 60–61 (Bankr. D. Del. Dec. 5, 2001) (Confirmation Order).

Once Debtors were served with Creditors's complaint in the State Court case, they had four options to challenge Creditors' prosecution of that case. Debtors could (1) assert the discharge provided by the Confirmation Order as an affirmative defense in the State Court case; (2) remove the case to United States District Court for the Southern District of Florida under 28 U.S.C. § 1452(a); (3) move the Delaware Bankruptcy Court to reopen the Chapter 11 Case pursuant to 11 U.S.C. § 350(b);[16] or (4) initiate a proceeding in the Delaware Bankruptcy

---

[16] Section 350(b) states, in pertinent part, that "[a] case may be reopened . . . to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

Court for the enforcement of the statutory injunction provided by 11 U.S.C.

§ 524(a)(2), as reflected in the Confirmation Order.  In re Kewanee Boiler Corp.,

270 B.R. 912, 918 (Bankr. N.D. Ill. 2002) (citing Stucker v. Cardinal Bldg.

Materials, Inc. (In re Stucker), 153 B.R. 219, 222 (Bankr. N.D. Ill. 1993)); see also

In re James, 184 B.R. 147, 150–51 (Bankr. N.D. Ala. 1995) (listing the four

options discussed above).  Debtors eschewed the first three options[17] and chose the

---

[17]  Debtors rejected option (1) by not pleading the discharge as an affirmative defense in the State Court case.
     As for option (2), 28 U.S.C. § 1452 gives the district courts removal jurisdiction for "claims related to bankruptcy cases":

> A party may remove any claim or cause of action in a civil action other than a
> proceeding before the United States Tax Court or a civil action by a governmental
> unit to enforce such governmental unit's police or regulatory power, to the district
> court for the district where such civil action is pending, if such district court has
> jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).  Removal of cases under § 1452(a) is possible only within "30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed."  Fed. R. Bankr. P. 9027(a)(3)(A); see also 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.").  Section 1334 refers to 28 U.S.C. § 1334, "Bankruptcy Cases and Proceedings," which gives "the district courts . . . original and exclusive jurisdiction of all cases under [the Bankruptcy Code], " id. § 1334(a), and for "original but not exclusive jurisdiction of all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]," id. § 1334(b).
     Debtors did not choose option (2) by timely removing the State Court case —in whole or in part—to federal court.  Debtors did not file their complaint for declaratory relief in the Florida Bankruptcy Court until April 2008, nearly four years after Creditors filed the State Court action, in December 2004.  Thus, even if the Florida Bankruptcy Court had treated the complaint as a de facto removal under 28 U.S.C. § 1452(a), that removal would have been untimely.  And the general removal statute, 28 U.S.C. § 1441, would not have applied; the State Court case, consisting only of state-law claims, was not one "of which the district courts of the United States

11

fourth, except that it initiated the proceeding by filing a complaint for declaratory and injunctive relief in the Florida Bankruptcy Court instead of petitioning the Delaware Bankruptcy Court to enforce the discharge injunction.

B.

Bankruptcy judges, like district judges, have the power to coerce compliance with injunctive orders. In the bankruptcy context, "the creditor who attempts to collect a discharged debt is violating not only a statute but also an

---

have original jurisdiction." 28 U.S.C. § 1441(a).

    As for option (3), 11 U.S.C. § 350 provides for the bankruptcy courts' administrative powers to open and close bankruptcy cases:

> (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

> (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

11 U.S.C. § 350. "[U]nder Bankruptcy Rule 4007(b) either the debtor or the creditor can move to reopen the case for the purpose of filing a complaint to determine dischargeability." In re James, 184 B.R. 147, 150–51 (Bankr. N.D. Ala. 1995) (quoting In re Mendiola, 99 B.R. 864, 870 (Bankr. N.D. Ill. 1989) (internal quotation marks omitted). Bankruptcy Rule 4007 provides that "[a] debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt." Fed. R. Bankr. P. 4007(a). "This rule prescribes the procedure to be followed when a party requests the court to determine dischargeability of a debt pursuant to §523 of the Code," id. note, which in turn lists exceptions to discharge under, inter alia, 11 U.S.C. § 1141, see 11 U.S.C. § 523. Thus, § 350(b) provides a mechanism whereby, after an estate has been administered according to a confirmed reorganization plan, the debtor or a creditor may reopen a bankruptcy case to obtain a determination of whether the creditor's claim is of a type exempted from discharge pursuant to 11 U.S.C. § 523.

    Debtors did not choose option (3) because they did not—and could not—move the Florida Bankruptcy Court to reopen the Chapter 11 Case. The case would have to be reopened, if at all, by the Delaware Bankruptcy Court which had administered the case. See 11 U.S.C. § 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." (emphasis added)).

12

injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge." Cox v. Zale Del., Inc., 239 F.3d 910, 915 (7th Cir. 2001) (citing Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 421 (6th Cir. 2000); Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.), 118 F.3d 1056, 1063 (5th Cir. 1997)); accord Hardy v. United States ex rel. I.R.S. (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996) ("[Creditor] may be liable for contempt . . . if it willfully violated the permanent injunction of § 524." (emphasis omitted)). In addition to the traditional sanctions for coercing compliance with an injunction—incarceration or financial penalty, see Newman v. Alabama, 683 F.2d 1312, 1318 (11th Cir. 1982)—a bankruptcy court may issue orders to obviate conduct that stands to frustrate administration of the Bankruptcy Code, see In re Hardy, 97 F.3d at 1389 (explaining that a bankruptcy court may issue "any type of order, whether injunctive, compensative or punitive, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code." (quoting Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1553–54 (11th Cir. 1996) (quoting 28 U.S.C. § 105)) (internal quotation marks omitted)).[18]  A bankruptcy

---

[18]  Federal judges have inherent power under Article III of the United States Constitution to hold litigants in civil contempt for violating court orders, see Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991), such as an injunction effected by 11 U.S.C. § 524(a)(2), see, e.g., Matthews v. United States (In re Matthews), 184 B.R. 594,  598 (Bankr. S.D. Ala. 1995) ("Civil contempt power is inherent in bankruptcy courts since all courts have authority to enforce compliance with their lawful orders.  This inherent authority extends to

court thus has the additional power to enjoin litigants from prosecuting in state court claims against former debtors.  In Travelers Indemnity Co. v. Bailey, 557 U.S. 137, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009), for instance, the Supreme Court cited "Travelers['s] invo[cation of] the terms of the [discharge] [o]rders in moving the Bankruptcy Court to enjoin 26 [suits] pending in state courts" and the Bankruptcy Court's subsequent order clarifying that the suits "were, and remained, prohibited by the [discharge] [o]rders" as an uncontroversial exercise of the bankruptcy court's "jurisdiction to interpret and enforce its own prior orders."  Id. at 143, 151, 129 S. Ct. at 2200, 2205; see also Cont'l Ill. Nat'l Bank v. Chicago, 294 U.S. 648, 675, 55 S. Ct. 595, 606, 79 L. Ed. 1110 (1935) ("The power to issue

---

statutory 'orders' such as . . . the discharge injunction."  (citing In re Galvez, 119 B.R. 849, 849 (Bankr. M.D. Fla. 1990)).

Bankruptcy-court power in this respect is given also by § 105(a) of the Bankruptcy Code:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a); see also Hardy v. United States ex rel. I.R.S. (In re Hardy), 97 F.3d 1384, 1389 (11th Cir. 1996) ("Section 105 creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings.").  "While a defendant may be cited for contempt under the court's inherent powers only upon a showing of 'bad faith,' [Creditor] may be liable for contempt under § 105 if it willfully violated the permanent injunction of § 524."  In re Hardy, 97 F.3d at 1390 (quoting Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1575 (11th Cir. 1995)) (emphasis omitted).

14

an injunction when necessary to prevent the defeat or impairment of its jurisdiction is inherent in a court of bankruptcy, as it is in a duly established court of equity."); Local Loan Co. v. Hunt, 292 U.S. 234, 241, 54 S. Ct. 695, 697–98, 78 L. Ed. 1230 (1934) ("[It is] the authority of the bankruptcy court to entertain the present proceeding, determine the effect of the adjudication and [discharge] order, and enjoin petitioner from its threatened interference therewith.").[19]

The party seeking to enforce an injunction cannot, however, obtain a successive injunction—i.e., an injunction ordering compliance with an existing injunction. See, e.g., Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1190 (9th Cir. 2011) ("An injunction against violating an existing injunction would be superfluous, adding no judicial action and providing no additional relief." (citing Solow v. Kalikow (In re Kalikow), 602 F.3d 82, 93–94 (2d Cir. 2010); 1 Dan B. Dobbs, Law of Remedies § 2.8(1), at 186–89 (2d ed. 1993)).

---

[19] 11 U.S.C. § 105(a) empowers the bankruptcy courts to enjoin state suits. See In re Hardy, 97 F.3d at 1389. The Anti-Injunction Act, 28 U.S.C. § 2283, does provide that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The current version of the Anti-Injunction Act, however, expanded upon the earlier version; "[a]n exception as to Acts of Congress relating to bankruptcy was omitted and the general exception substituted to cover all exceptions." Id. note. Hence, "[t]he language of § 105 encompasses any type of order, whether injunctive, compensative or punitive, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code," In re Hardy, 97 F.3d at 1389 (quoting Jove Eng'g, 92 F.3d at 1553–54 (quoting 28 U.S.C. § 105)) (internal quotation marks omitted)), such as when allowing a state-court claimant to prosecute his suit would frustrate administration of the bankruptcy estate.

In this case, Debtors seeks to prevent Creditors from pursuing in State Court claims purportedly discharged in the Chapter 11 Case.  If the claims were discharged, Creditors may be in contempt of the discharge injunction for maintaining the State Court action.  See Cox, 239 F.3d at 915; In re Hardy, 97 F.3d at 1390.  But Debtors, in drafting their complaint for declaratory relief, did not frame the pleading as a motion for an order to show cause why Creditors should not be held in contempt for violating the discharge injunction.  Instead, Debtors moved the court to declare that Creditors' claims had been discharged in the Chapter 11 Case pursuant to § 1141 of the Bankruptcy Code,  Compl. for Declaratory Relief ¶ 27, Alderwoods Grp. v. Garcia, No. 08-1266-BKC-RAM-A (Bankr. S.D. Fla. Apr. 7, 2008), and to enjoin Creditors "from continuing the [State Court action], pursuant to § 524 of the Bankruptcy Code." Id. at 5-6. Debtors requested relief is either a misguided attempt to have the court sanction Creditors purported contempt of the Chapter 11 Case's discharge provision by enjoining Creditors from prosecuting their State Court action,[20] cf. Travelers

_____

[20]  We say misguided because Alderwoods's complaint does not reflect the proper procedure to invoke the court's civil contempt power.

> If the plaintiff (the party obtaining the writ) believes that the defendant (the enjoined party) is failing to comply with the decree's mandate, the plaintiff moves the court to issue an order to show cause why the defendant should not be adjudged in civil contempt and sanctioned.  The plaintiff's motion cites the injunctive provision at issue and alleges that the defendant has refused to obey its

16

Indem. Co., 557 U.S. at 148–52, 129 S. Ct. at 2203–05, or it is an impermissible pursuit of a successive injunction, cf. Barrientos, 633 F.3d at 1190.

We think it unnecessary to distill any further the relief Debtors' complaint seeks. What Debtors want is the enforcement of their discharge injunction. If they meant to obtain it by having a bankruptcy court sanction Creditors' contempt for disregarding the injunction by, for example, enjoining Creditors from prosecuting the State Court action, then the Florida Bankruptcy Court was not the court with the power to do so.

## C.

The ultimate question in a case like this one is which court has the power to enforce the discharge injunction. To answer this question, we must understand the relationship between a bankrupt's estate and the administration of the estate.

### 1.

---

mandate. If satisfied that the plaintiff's motion states a case of non-compliance, the court orders the defendant to show cause why he should not be held in contempt and schedules a hearing for that purpose. At the hearing, if the plaintiff proves what he has alleged in his motion for an order to show cause, the court hears from the defendant. At the end of the day, the court determines whether the defendant has complied with the injunctive provision at issue and, if not, the sanction(s) necessary to ensure compliance.

Reynolds v. Roberts, 207 F.3d 1288, 1298 (11th Cir. 2000) (footnote omitted) (citations omitted).

17

As a matter of basic policy, "[b]ankruptcy jurisdiction, as understood today and at the time of the framing, is principally in rem jurisdiction." Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 369, 126 S. Ct. 990, 1000, 163 L. Ed. 2d 945 (2006). "[T]he jurisdiction of courts adjudicating rights in the bankrupt estate included the power to issue compulsory orders to facilitate the administration and distribution of the res." Id. at 362, 126 S. Ct. at 996. A court, however, must have possession of the res in order to obtain in rem jurisdiction over its distribution. For example, by analogy to in rem admiralty cases[21]—an analogy the Supreme Court has found applicable to bankruptcy, see Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 446–47, 124 S. Ct. 1905, 1910, 158 L. Ed. 2d 764 (2004)—we have said that "[o]nly if the court has exclusive custody and control over the [res] does it have jurisdiction over the [res] so as to be able to adjudicate rights in it that are binding against the world," Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel, 657 F.3d 1159, 1171 (11th Cir. 2011) (quoting R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 964 (4th Cir. 1999)) (internal quotation marks omitted).[22]

---

[21] Libels against salvaged vessels or the proceeds thereof are in rem proceedings. The Sabine, 101 U.S. (11 Otto) 384, 386, 25 L. Ed. 982 (1880).

[22] The same is true of civil forfeiture proceedings. "[I]t long has been understood that a valid seizure of the res is a prerequisite to the initiation of an in rem civil forfeiture proceeding." Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 84, 113 S. Ct. 554, 557, 121 L. Ed. 2d 474 (1992) (emphasis omitted).

The Bankruptcy Code provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). Because "[b]ankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate," it follows that "the court's jurisdiction is premised on the debtor and his estate." Hood, 541 U.S. at 447, 124 S. Ct. at 1910 (citing 28 U.S.C. § 1334(e)). It is this aspect of a bankruptcy court's jurisdiction that "permits it to 'determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question,'" in that "'[t]he proceeding is "one against the world."'" Id. at 448, 124 S. Ct. at 1911 (quoting 16 J. Moore et al., Moore's Federal Practice § 108.70[1] (3d ed. 2004)) (alteration in original). Accordingly, the court administering the bankrupt's estate—the res—is the court with the power to enter orders effecting its distribution and to "adjudicate rights in it that are binding against the world." Odyssey Marine, 657 F.3d at 1171 (quoting R.M.S. Titanic, 171 F.3d at 964) (internal quotation marks omitted).

Logically, then, a bankruptcy court necessarily has power to enforce its own orders regarding its administration of the estate. Local Loan Co., 292 U.S. at 241, 54 S. Ct. at 697–98. When, in a Chapter 11 case, a bankruptcy court issues an

19

order confirming a reorganization plan, that court "retains postconfirmation jurisdiction to complete any action pertinent to the plan." 9D Am. Jur. 2d Bankruptcy § 3014 (2012); see also 28 U.S.C. §§ 157, 1334 (providing the bankruptcy courts—by operation of referral under § 157—"original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."). Indeed, "[t]he retention of jurisdiction by the bankruptcy court after confirmation is particularly appropriate where . . . the bankruptcy court expressly retains jurisdiction under the plan." LTV Corp. v. Back (In re Chateaugay Corp.), 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996) (citing Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 7 F.3d 32, 34 (2d Cir. 1993)). These principles ought to be self-evident; it would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district.

Moreover, the court that enters an injunctive order retains jurisdiction to enforce its order. In this respect, a bankruptcy court is no different than any other federal court, which possesses the inherent power to sanction contempt of its orders. See Chambers v. NASCO, Inc., 501 U.S. 32, 50, 111 S. Ct. 2123, 2136, 115 L. Ed. 2d 27 (1991). The bankruptcy court that confirms a reorganization

20

plan thus enters an injunctive order—the confirmation order, <u>see</u> 11 U.S.C. §§ 524, 1141—the violation of which it can sanction. That said, although a federal court's injunction applies nationwide, "[v]iolation of an injunctive order is cognizable <u>in the court which issued the injunction</u>." <u>Waffenschmidt v. MacKay</u>, 763 F.2d 711, 716 (5th Cir. 1985) (quoting <u>Stiller v. Hardman</u>, 324 F.2d 626, 628 (2d Cir. 1963)) (alteration in original) (emphasis added) (quotation marks omitted); <u>see also</u> <u>Cox</u>, 239 F.3d at 915 ("the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court <u>that issued the order of discharge</u>." (emphasis added)).

Perhaps most importantly, then, the power to sanction contempt is jurisdictional.

> [T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the [ordering] court. . . . To submit the question of disobedience to another tribunal . . . would operate to deprive the proceeding of half its efficiency. . . . [T]he sole adjudication of contempts, and the punishments thereof [belong] exclusively . . . to each respective court.

<u>In re Debs</u>, 158 U.S. 564, 594–95, 15 S. Ct. 900, 910, 39 L. Ed. 1092 (1895) (citation omitted) (internal quotation marks omitted), <u>abrogated on other grounds</u>

21

by <u>Bloom v. Illinois</u>, 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968); <u>see also</u> <u>Baker ex rel. Thomas v. Gen. Motors Corp.</u>, 522 U.S. 222, 118 S. Ct. 657, L. Ed. 2d 580 (1998) ("[The] nonrendition forum enforces the monetary relief portion of a judgment but leaves enforcement of the injunctive portion to the rendition forum." (citing <u>Stiller v. Hardman</u>, 324 F.2d 626, 628 (2d Cir. 1963))).

Thus, the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order. <u>In re Debs</u>, 158 U.S. at 595, 15 S. Ct. at 910; <u>see also</u> <u>Waffenschmidt</u>, 763 F.2d at 716 ("Enforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order."); <u>Suntex Dairy v. Bergland</u>, 591 F.2d 1063, 1068 (5th Cir. 1979) ("If [conduct] is found by the Missouri court to be in violation of its injunction, it may be in contempt of that court. The appropriate response to such contempt, if it exists, is a matter for the Missouri district court under that court's continuing jurisdiction to enforce or protect its injunction order.");[23] <u>Sullivan v. United States</u>, 4 F.2d 100, 101 (8th Cir. 1925) ("[T]he court which issues the injunction is the court against which the

---

[23] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

contempt is committed and the court which has jurisdiction to deal with it.").

Other courts are without jurisdiction to do so.

In the case at hand, it is apparent that if Creditors' filing of the State Court action indeed violated the discharge injunction contained in the Confirmation Order, then it was the Delaware Bankruptcy Court's injunction to enforce—not the Florida Bankruptcy Court's. The Chapter 11 Case was administered by the Delaware Bankruptcy Court; that court confirmed Debtors' reorganization plan and entered the order discharging Debtors' preconfirmation liabilities. As the court that controlled the res of Debtors' estate, the Delaware Bankruptcy Court retained jurisdiction to effectuate and enforce the discharge injunction. This is even more apparent considering that the Confirmation Order explicitly enjoined suits to collect on discharged debts and vested continuing jurisdiction in the Delaware Bankruptcy Court to enforce violations of the discharge injunction. See In re Chateaugay Corp., 201 B.R. at 66. If Creditors' claims were discharged, then the Delaware Bankruptcy Court alone had the power to sanction Creditors' alleged contempt for prosecuting discharged claims in violation of the injunction. See, e.g., Waffenschmidt, 763 F.2d at 716. Thus, regardless of how Debtors framed the allegations of the complaint they filed in the Florida Bankruptcy Court—as seeking the sanctioning of Creditors' alleged contempt, an injunction against

further violation of the discharge injunction, or an order enjoining the State Court case from proceeding further—the Florida Bankruptcy Court lacked jurisdiction to entertain the complaint because the discharge injunction was never its to enforce.

2.

That alleged contemnors are without the territorial jurisdiction of the rendition forum is of no moment. As a general principle, the Due Process Clause requires that a federal court has jurisdiction over a person in order to bind that person through judgment. See U.S. Const. amend. V; Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987) ("The requirement that a court have personal jurisdiction flows . . . from the Due Process Clause. . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." (quotation omitted) (second alteration in original)). Notwithstanding this general requirement, nonparties who engage in enjoined conduct can be sanctioned when their conduct would frustrate the court's "ability to render a binding judgment." United States v. Hall, 472 F.2d 261, 267 (11th Cir. 1972). Accordingly, the courts that have considered the issue generally agree that this sanction power extends to a person outside the territorial limits of the court that issued the injunctive order, provided that the person had actual notice of the order and acted in concert with the party

24

explicitly enjoined. ClearOne Communications, Inc. v. Bowers, 651 F.3d 1200, 1215–16 (10th Cir. 2011); Sec. & Exch. Comm'n v. Homa, 514 F.3d 661, 673–75 (7th Cir. 2008); Waffenschmidt, 763 F.2d at 714. Analogously, in cases that are essentially in rem—and therefore concern the orderly and efficient distribution of a res—the court's power to enjoin and to sanction extends to the whole world, to any person who comes into contact with the res. See Hall, 472 F.2d at 265–66 ("Federal courts have issued injunctions binding on all persons, regardless of notice, who come into contact with property which is the subject of a judicial decree."); see also Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1103 (11th Cir. 2004) ("When particular property is before the district court . . . such as when it is the subject of an in rem proceeding or in the custody of a bankruptcy trustee, the court may generally enjoin proceedings in any other court regarding that property." (citing Macon Uplands Venture v. Metro. Life Ins. Co. (In re Macon Uplands Venture), 624 F.2d 26, 28 (5th Cir. 1980))).[24]

_____

[24] An injunction to cease prosecuting a claim that was discharged in bankruptcy is such an injunction. The discharge granted by operation of 11 U.S.C. § 524 "embodies the 'fresh start' concept of the bankruptcy code." In re Hardy, 97 F.3d at 1388–89. In this sense, the discharge injunction itself is like an All Writs Act injunction issued "in aid of" a court's jurisdiction, see 28 U.S.C. § 1651, in that the discharge injunction is "in aid of" the purpose of the Bankruptcy Code. Similarly, enjoining prosecution of a discharged claim would also be "in aid of" the court's jurisdiction as a necessary means of effectuating the discharge injunction. See, e.g., Local Loan Co. v. Hunt, 292 U.S. 234, 241, 54 S. Ct. 695, 697–98, 78 L. Ed. 1230 (1934) ("[It is] the authority of the bankruptcy court to entertain the present proceeding, determine the effect of the adjudication and [discharge] order, and enjoin petitioner from its threatened interference

25

In the bankruptcy context, a bar-date notice, published to unknown creditors, suffices to bring creditors within the power of the Bankruptcy Court administering the estate. This is true regardless of whether actual notice is received—provided that the means of publication are those "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950); see also City of New York v. N.Y., N. H. & H. R. Co., 344 U.S. 293, 296, 73 S. Ct. 299, 301, 97 L. Ed. 333 (1953) ("[W]hen the names, interests and addresses of [creditors] are unknown, plain necessity may cause a resort to publication."). Because the Bankruptcy Court has exclusive jurisdiction over the debtor's estate, 28 U.S.C. § 1334(e), the published notice gives potential creditors sufficient "contact" with the debtor's estate such that the court may properly enjoin those who are not present within the court's federal district consistent with Fifth Amendment due process. That court, then, may properly sanction those without the district when their conduct violates or frustrates the court's injunctive orders. So, too, could the Delaware Bankruptcy

therewith."). The bankruptcy court may issue such injunctive order pursuant to 11 U.S.C. § 105(a), see In re Hardy, 97 F.3d at 1389–90, rather than under the All Writs Act. To be clear, however, the order is distinct from an injunctive order issued as the remedy for the defendant's breach of the right asserted in the plaintiff's complaint. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1092–1103 (11th Cir. 2004) (explaining the differences between "traditional," "statutory," and "All Writs Act" injunctions).

26

Court adjudicate the rights of Creditors and the members of their class,

notwithstanding that Creditors and those similarly situated may or may not have

independent jurisdictional ties to the District of Delaware.[25]

3.

This conclusion does not fully resolve the matter at hand, for there remains

the issue of how we are to dispose of this appeal. Above all, the Delaware

---

[25] By analogy, posit one alternative to Debtors' course in the present setting: rather than Creditors suing Debtors in state court, Creditors sue Debtors in federal court seeking relief from Debtor's bankruptcy discharge. Creditors' remedy is not an in personam action against Debtors, but relief through Fed. R. Civ. P. 60(d)—made applicable to the bankruptcy courts, with certain exceptions, by Fed. R. Bankr. P. 9024—which provides that a court may "entertain an independent action to relieve a party from a judgment, order, or proceeding; grant relief . . . to a defendant who was not personally notified of the action; or set aside a judgment for fraud on the court." Indeed, one such ground for relief from the discharge injunction is lack of notice:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request . . . .

11 U.S.C. § 523(a)(3). This is because in an in rem proceeding, the enforceability of an in rem judgment is premised upon either actual or constructive notice to any persons who may have a claim to the res. See, e.g., Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1342 (11th Cir. 2005).

Bankruptcy Court should be the court to consider the merits of Debtor's assertion that Creditors are pursuing discharged claims. The simplest option would be to remand the case with the instruction that Debtors' complaint be dismissed without prejudice. If that were the disposition, Debtors presumably would turn to the Delaware Bankruptcy Court for relief. Taking that course, however, would seem unnecessarily cumbersome and wasteful of judicial resources.

Instead, we believe that transferring the case to the United States District Court for the District of Delaware would be more efficient. The bankruptcy jurisdiction and venue statutes provide that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. First, if characterized as an attempt to enforce the Confirmation Order's discharge injunction, Debtors' complaint initiated a "proceeding under title 11," 28 U.S.C. § 1412, that triggered the Florida Bankruptcy Court's statutory transfer power, see Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 (11th Cir. 1999) ("'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code." (citing Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987))); see also 28 U.S.C. § 1334(b) (giving the district courts original jurisdiction "of all civil proceedings arising under title 11"); Ins. Co. of N.

Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l

Gypsum Co.), 118 F.3d 1056, 1063–64 (5th Cir. 1997) ("[An] action to enforce

the discharge injunction . . . is a federal cause of action, asserting a statutory right

under the Bankruptcy Code."). Thus, § 1412's case-or-proceeding prerequisite is

satisfied.

Second, although courts cite myriad factors in determining whether to

transfer a case under § 1412 "in the interest of justice,"[26] we think no factors favor

transfer more heavily here than that (1) the transferor forum has no power to

adjudicate Debtor's claim for relief and (2) the transferee forum is the only court

with jurisdiction to provide the relief Debtors seek. If the case is transferred to the

United States District Court for the District of Delaware, that court may refer it to

the Delaware Bankruptcy Court pursuant to that District Court's procedures. See

28 U.S.C. § 157(a) ("Each district court may provide that any or

all . . . proceedings arising under title 11 or arising in or related to a case under

title 11 shall be referred to the bankruptcy judges for the district."). Accordingly,

we shall vacate the District Court's judgment and remand the case with the

---

[26] See, for example, the interest-of-justice factors listed in A.B. Real Estate, Inc. v. Bruno's, Inc. (In re Brunos, Inc.), 227 B.R. 311 (Bankr. N.D. Ala. 1998): (1) "[e]conomics of estate administration"; (2) "[p]resumption in favor of the 'home court'"; (3) "[j]udicial efficiency"; (4) "[a]bility to receive a fair trial"; (6) "[t]he state's interest in having local controversies decided within its borders, by those familiar with its laws"; (7) "[e]nforceability of any judgment rendered"; and (8) "[p]laintiff's original choice of forum." Id. at 324–25.

29

instruction that the District Court transfer the case to the United States District Court for the District of Delaware.

III.

For the foregoing reasons, the judgment of the District Court is VACATED and the case is REMANDED to the District Court for the disposition set out above.

SO ORDERED.