**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE GARY LAWRENCE OZENNE, *Debtor*, | No. 11-60039 |
| | BAP No. 11-1208 |
| GARY LAWRENCE OZENNE, *Appellant*, | |
| v. | OPINION |
| CHASE MANHATTAN BANK; OCWEN LOAN SERVICING; OCWEN FEDERAL BANK FSB, *Appellees*. | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kirscher, Markell, and Dunn, Bankruptcy Judges, Presiding

Submitted December 9, 2014[*]
San Francisco, California

Filed March 25, 2016

Before: J. Clifford Wallace, Edward Leavy,
and Jay S. Bybee, Circuit Judges.

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Opinion by Judge Wallace;
Partial Concurrence and Partial Dissent by Judge Bybee

## SUMMARY[**]

### Bankruptcy

Vacating the bankruptcy appellate panel's (BAP) denial of a petition for a writ of mandamus, the court of appeals held that the BAP did not have jurisdiction to consider the mandamus petition.

The court held that the BAP lacked jurisdiction under the All Writs Act because the BAP, which is established by the circuit judicial council pursuant to 28 U.S.C. § 158(b)(1), is not one of the "courts established by Act of Congress."

Concurring in the judgment only, and dissenting otherwise, Judge Bybee wrote that the All Writs Act does not require that a court be established directly by Congress. He wrote that the majority's opinion raises constitutional problems because he doubts that Congress can delegate its powers to create courts to the judicial branch.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Gary Lawrence Ozenne, Corona, California, pro se Appellant.

Jeffrey S. Allison and Eric D. Houser, Houser & Allison, Irvine, California, for Appellees.

**OPINION**

WALLACE, Senior Circuit Judge:

Gary Ozenne appeals from the Ninth Circuit bankruptcy appellate panel's (BAP) denial of his petition for a writ of mandamus. Because the BAP is not a "court[] established by Act of Congress" under the All Writs Act, 28 U.S.C. §1651(a), we hold that the BAP did not have jurisdiction to consider the petition.

I.

Several years after his bankruptcy case was closed, Ozenne filed a motion for sanctions in the bankruptcy court. **[Bankr. Ct. Dkt. No. 111]** The bankruptcy court ruled that it lacked jurisdiction to grant relief **[*Id.* No. 119]** and Ozenne filed a petition for writ of mandamus before the BAP **[BAP Dkt. 1]**. Relying on its previous decision *In re Salter*, 279 B.R. 278 (B.A.P. 9th Cir. 2002), the BAP held that it had jurisdiction pursuant to 28 U.S.C. § 1651 to consider the petition, and then denied the petition. **[*Id.* No. 4]** Ozenne appealed from that denial. **[*Id.* No. 6]**

## II.

Although the question of whether the BAP has jurisdiction to address a petition for a writ of mandamus has not been raised on appeal, we are "bound to consider jurisdictional defects sua sponte." *United States v. S. Pac. Transp. Co.*, 543 F.2d 676, 682 (9th Cir. 1976). The BAP cited subsection (a) of the All Writs Act as the source of its authority to decide a writ of mandamus. Subsection (a) states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

The question therefore is whether the BAP is one of the "courts established by Act of Congress." We conclude that the answer is no.

## A.

The statute authorizing the BAP answers the question. The BAP was not established by an "Act of Congress"; rather, Congress gave the judicial council of each circuit discretion to establish a bankruptcy appellate panel service.

The statute authorizing the creation of the BAP states that

> [t]he judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges . . . appointed by the judicial council . . . to hear and determine, with the consent of all the parties, appeals [from certain final judgments, orders,

and decrees of bankruptcy judges] unless the judicial council finds that –

(A) there are insufficient judicial resources available in the circuit; or

(B) establishment of such a service would result in undue delay or increased cost to parties in [bankruptcy cases].

28 U.S.C. § 158(b)(1). The statute does not simply mandate that the judicial council establish a BAP. Instead, a circuit's judicial council may establish a BAP based on its assessment of the judicial resources available in the circuit and whether the service would cause undue delay or increased cost to the parties. 28 U.S.C. § 158(b)(1)(A)–(B). In addition, the BAP continues only so long as the Judicial Council of the Circuit wishes it to. 28 U.S.C. § 158(b)(2). The BAP is, in effect, a temporary panel to be used only so long as the judicial council chooses to keep it operational. BAP membership is also on a temporary basis, as it is staffed by bankruptcy judges who serve by request, in addition to their assigned role as bankruptcy judges. 28 U.S.C. § 158(b); Judicial Council of the Ninth Circuit, "Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit" (effective November 18, 1988; as amended May 4, 2010), pg. 3. It has none of the permanency of a court.

Pursuant to congressional authorization, the Judicial Council of the Ninth Circuit established a BAP and has continued the BAP's service from time to time since then. *See* Judicial Council of the Ninth Circuit, "Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit." Because the BAP is a panel service established by

the Judicial Council of the Ninth Circuit, not a "court established by Act of Congress," it does not have writ power under the All Writs Act.[1] Indeed, its "service" status is demonstrated by the authority of the Judicial Council of the Ninth Circuit to terminate the BAP at any time.

## B.

The BAP itself previously concluded it had mandamus power in *In re Salter*, but it was incorrect. *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002) (concluding that "this Court is not bound by a [BAP] decision"). In reaching its conclusion, the BAP first considered various dictionary definitions of the word "establish," such as "'[t]o set up on a secure or permanent basis; to found,'" and "'to bring into existence.'" *In re Salter*, 279 B.R. at 281, *quoting* Oxford English Dictionary Online and Webster's New Collegiate Dictionary 391 (1975). The BAP concluded that under such definitions "Congress could be said to have 'established' BAPs . . . because BAPs did not exist until Congress provided the authority for them." *Id.*

Although the definitions used by the BAP do not differ meaningfully from definitions in current legal sources, *see, e.g.*, Black's Law Dictionary (10th ed. 2014) (defining "establish" as "[t]o make or form; to bring about or into existence"), the BAP's application of these definitions stretches the meaning of "established" too far, since under its logic *any* tribunal whose existence is logically dependent in

---

[1] Our dissenting colleague asserts the majority is willing to consider the BAP a court. Not so. Congress knows full well how to the spell the word "court" and we respect that difference and should interpret the meaning of the statute as it has been written.

some way upon action by Congress (including any tribunal that receives any kind of federal funding or authorization) could be empowered under the All Writs Act. The most obvious meaning of the phrase "established by Act of Congress" is that it covers those entities directly created by a Congressional Act, such as the United States Court of Appeals for Veterans Claims. *See Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1022 (9th Cir. 2012) ("The Veterans Court also has authority under the All Writs Act to issue 'writs necessary or appropriate in aid of [its] jurisdiction [ ].'"); *cf.* 38 U.S.C. § 7251 ("There is hereby established, under Article I of the Constitution of the United States, a court of record to be known as the United States Court of Appeals for Veterans Claims"). The phrase may even be broad enough to include entities created by a third party at the express direction of Congress. *Compare United States v. Draughon*, 42 C.M.R. 447 (1970) *with Combest v. Bender*, 43 C.M.R. 899 (1971).

However, a tribunal created by the independent actions, choices, or judgment of a third party has not been "established by Act of Congress," even if authorization or support from Congress was a logically necessary part of the tribunal's creation (such as a Judicial Council of the Circuit). Thus, since the BAP was created by the Judicial Council of the Ninth Circuit based on its own independent decision and action, the BAP was not "established by Act of Congress" even though a Congressional Act first suggested and authorized its creation.

The BAP in *In re Salter* also reasoned that it possessed writ power because the purpose of the All Writs Act was to give federal courts the power to issue writs in aid of their jurisdiction, and since "Congress . . . has given [the BAP]

general appellate powers over appeals from orders and judgments of bankruptcy courts" and "[n]othing in 28 U.S.C. § 158 limits the powers implied from the fact of the BAPs' creation as an appellate tribunal," the BAP's powers "must include the traditional power to issue writs that aid in their jurisdiction." 279 B.R. at 282. This line of reasoning, however, ignores the BAP's limited jurisdiction.

The BAP could only exercise power under the All Writs Act insofar as it is "in aid of" the BAP's existing jurisdiction because the All Writs Act does not confer an independent source of jurisdiction. 28 U.S.C. § 1651(a)*; see, e.g.*, *United States v. Denedo*, 556 U.S. 904, 914 (2009), *citing Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999) ("[T]he All Writs Act and the extraordinary relief the statute authorizes are not a source of subject-matter jurisdiction").

The BAP's jurisdiction is contingent upon parties' consent. 28 U.S.C. § 158(b)(1) enshrines this consent requirement, stating the BAP service will "hear and determine, with the consent of all the parties, appeals" from final judgments, orders, and decrees. Section 158(c)(1) specifies how parties express their consent (or lack thereof) to the BAP's jurisdiction. While the default position is that appeals from the bankruptcy court proceed to the BAP, section 158(c)(1) provides both appellants and appellees the opportunity to "opt-out" of having the BAP hear their case. 28 U.S.C. § 158(c)(1) states:

> Subject to subsections (b) and (d)(2), each appeal under subsection (a) shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless—

(A) the appellant elects at the time of filing the appeal; or

(B) any other party elects, not later than 30 days after service of notice of the appeal;

to have such appeal heard by the district court.

Under the statute, appellants can choose to have the district court hear their appeal. Otherwise, when appellants appeal to the BAP, a notice of appeal issues and a 30-day time period is triggered in which appellees can choose to have the district court hear the case.

Petitions brought under the All Writs Act, however, do not require the consent of the opposing party, which would allow one party to bring unilaterally its case before the BAP. Petitions for writ of mandamus do not trigger a notice of appeal and election period, and appellees, as a result, never have the opportunity to elect to have the district court hear their case.

The situation in this case is instructive. Here, Ozenne failed to file a timely notice of appeal pursuant to Rule 8003(a) of the Federal Rules of Bankruptcy Procedure. Ozenne's failure to appeal the bankruptcy court's decision meant that the election period was never triggered, and the defendant never had the opportunity to elect to have the district court hear the case. Thus, the BAP's decision to review the petition for writ of mandamus, even though it was ultimately denied, was not "in aid of" its jurisdiction.

Finally, the BAP reasoned that since the Court of Criminal Appeals (formerly known as the Court of Military

Review) was created using similar statutory language to that used in connection with the creation of the BAP, and since the Court of Military Appeals concluded that the Court of Criminal Appeals was a court created by Congress in *Dettinger v. United States*, 7 M.J. 216, 219 (C.M.A. 1979), the BAP should also be considered a court created by Congress under the same reasoning. *In re Salter*, 279 B.R. at 282–83. However, the statutory language under which the Court of Criminal Appeals was created differs significantly from the statutory language under which the BAP was created: the former states in relevant part that "[e]ach Judge Advocate General shall establish a Court of Criminal Appeals," 10 U.S.C. § 866(a), while the latter states in relevant part that "[t]he judicial council of a circuit shall establish a bankruptcy appellate panel service . . . *unless* the judicial council finds that: (A) there are insufficient judicial resources available in the circuit; or (B) establishment of such service would result in undue delay or increased cost to parties in cases under title 11," 28 U.S.C. § 158(b)(1) (emphasis added). The former language allows a Judge Advocate General no discretion in determining whether to establish a Court of Criminal Appeals, lending credence to the conclusion of the Court of Military Appeals that the All Writs Act covers the Court of Criminal Appeals. In contrast, a Judicial Council of the Circuit must decide whether to establish a bankruptcy appellate panel service based on its own assessment of judicial resources and costs. This distinction makes all the difference in determining whether, under the All Writs Act, a tribunal was established by Congress itself—either directly or by mandatory delegation—or instead by a third party (such as the Judicial Council of the Circuit) at its own discretion. Moreover, it is clear that in the former Congress was creating a permanent court with permanent judges, while in the latter the panel services was

temporary, as the Judicial Council of the Circuit could terminate the panel service at any time, and the judges were not permanent but served for a limited time and served in addition to the official assignment as a bankruptcy judge.

C.

The dissent contends that our opinion neuters the BAP. The dissent ignores the BAP's historically subordinate role within the federal judiciary, and the constitutional issues that would arise should the BAP be afforded power under the All Writs Act.

While Congress may create certain federal tribunals pursuant to its constitutionally delegated powers in Article I, its authority to do so is not plenary. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 63–64 (1982) (plurality). Article III of the Constitution provides that "[t]he judicial Power of the United States" shall be exercised by judges who "hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." U.S. Const. art. III, § 1. Congress cannot diminish the judicial branch's power by granting jurisdiction to Article I tribunals over cases that are within the "judicial power of the United States" as described in Article III, and, similarly, cannot "vest[] all 'essential attributes' of the judicial power of the United States" in an adjunct court shielded from proper review by an Article III court. *N. Pipeline*, 458 U.S. at 63–64, 84–87 (plurality). To allow Congress to do so undermines "the checks and balances . . . built into the tripartite government," as well as the "guarantee that the process of adjudication itself remain[] impartial,"

because the federal judiciary would no longer "stand independent" of the Legislature. *Id*. at 57–58 (plurality).

Guided by these principles, the Supreme Court in *Northern Pipeline* struck down Congress's broad grant of authority to the bankruptcy courts under the Bankruptcy Reform Act of 1978. *Id*. at 87 (plurality). The four-justice plurality reasoned that bankruptcy courts under the 1978 Act unconstitutionally exercised jurisdiction over cases within the purview of Article III courts, and were not subject to sufficient scrutiny by Article III courts. *Id*. at 83–87 (plurality). A full majority of the court, although failing to agree on the scope of the "public rights" exception that allows Congress to assign a narrow category of cases to Article I legislative courts, concluded that the Act vested all "essential attributes" of the judicial power in the bankruptcy courts, and the courts were therefore not constitutionally acceptable adjuncts. *Id*. at 69–71, 85–86 (plurality); *see id*. at 91 (Rehnquist, J., concurring).

In *In re Burley*, decided a few months after the Supreme Court's decision in *Northern Pipeline*, our court addressed the BAP's constitutionality in light of *Northern Pipeline*. 738 F.2d 981, 985–87 (9th Cir. 1984). Our court concluded that the BAP, unlike the bankruptcy courts under the 1978 Act, was constitutional. *Id*. at 985. In reaching that conclusion, our court emphasized that the Article III court of appeals retained the "essential attributes of the judicial power." *Id*. at 985. Our court retains that power because we can effectively review the BAP's decisions de novo, have the authority to render final decisions, and exercise "control over the BAP in that the BAP can be established only by order of the circuit council." *Id*.

After the decision in *In re Burley*, Congress passed two more acts affecting the establishment of BAPs. In 1984 Congress passed the "Bankruptcy Amendments and Federal Judgment Act of 1984," Pub.L. No. 98-353S 104(a), 98 Stat. 341 (1984), followed by an amendment to the bankruptcy appeals statute in 1994, 28 U.S.C. § 158.

28 U.S.C. § 158, while enabling the increased use of BAPs among the circuits, still limits the BAP's role within the federal judiciary. *Id.*; Jonathan Remy Nash & Rafael I. Pardo, *An Empirical Investigation into Appellate Structure and the Perceived Quality of Appellate Review*, 61 VAND. L.REV. 1745, 1757 (2008). Primarily, the 1994 amendments did not erase each circuit's discretion in establishing a BAP. 28 U.S.C. § 158(b)(1). Moreover, the BAP does not have authority to hear bankruptcy appeals "unless the district judges for the district in which the appeal[] occur[s], by majority vote, have authorized [the BAP] to hear and determine appeals originating in such district." 28 U.S.C. § 158(b)(2)(6).

The BAP also does not retain its own permanent set of judges. Instead, the BAP is staffed by a rotating set of bankruptcy judges who are appointed at the behest of the judges of the Court of Appeals of the United States for the circuit in which the bankruptcy court is located, and removed at the behest of the Judicial Council of the Circuit. 28 U.S.C. § 152(a), (e); Judicial Council of the Ninth Circuit, "Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit." The rotating set of judges has narrow jurisdiction to hear appeals from the bankruptcy court. Again, the BAP only has jurisdiction to "hear and determine, with

the consent of all the parties, appeals" from final judgments, orders, and decrees from the bankruptcy court.  28 U.S.C. § 158(b)(1).

The BAP's limited jurisdiction is identified by Congress's treatment of the BAP as a "panel service." 28 U.S.C. § 158(b)(1) ("The judicial council of a circuit shall establish a bankruptcy appellate *panel service*. . . .") (emphasis added). While the dissent would have this court deviate from the statute's plain language and grant the BAP powers as though Congress had established the BAP as something other than a panel service, there is no reason to do so. Had Congress intended for the BAP to exercise authority beyond its prescribed role as a panel service, it would have provided for it in the BAP's authorizing statute. *Compare* 28 U.S.C. § 158(b)(1) *with* 10 U.S.C.A § 941 ("There is a court of record known as the United States Court of Appeals for the Armed Forces. The court is established under Article I of the Constitution"), *and* 38 U.S.C.A. § 7251 ("There is hereby established, under Article I of the Constitution of the United States, a court of record to be known as the United States Court of Appeals for Veterans Claims"), *and* 28 U.S.C. § 171 ("The president shall appoint. . . sixteen judges who shall constitute a court of record known as the United States Court of Federal Claims. The Court is declared to be a court established under article I of the Constitution of the United States").

Our court, recognizing the BAP's narrow jurisdiction, has even concluded that the BAP's decisions are not binding. *In re Silverman*, 616 F.3d 1001, 1005 n. 1 (9th Cir. 2010) ("[W]e treat the BAP's decisions as persuasive authority given its special expertise in bankruptcy issues") (emphasis added); *In re Cardelucci*, 285 F.3d at 1234 ("[T]his Court is

not bound by a [BAP] decision"); *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) ("[I]t must be conceded that BAP decisions cannot bind the district courts themselves. As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction").

The BAP's subordinate role within the federal judiciary is pertinent to our decision. Supreme Court and our court's precedents emphasize that the BAP derives its legitimacy from the overview exercised by Article III courts, as well as the BAP's inability to infringe upon "the essential attributes of judicial power." *N. Pipeline*, 458 U.S. at 86–87; *In re Burley*, 783 F.2d at 785–87. Even though the barriers to Article III review the BAP would create by having authority under the All Writs Act "seem innocuous at first blush," they nevertheless "chip away at the authority of the Judicial Branch." *Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011); *see also id*., *quoting Reid v. Covert*, 354 U.S. 1, 39 (1957) (plurality opinion) ("A statute may no more lawfully chip away at the authority of the judicial branch than it may eliminate it entirely. 'Slight encroachments create new boundaries from which legions of power can seek new territory to capture'"). First, allowing the BAP to entertain writs of mandamus would circumvent the consent requirement in 28 U.S.C. § 158(c)(1), effectively preventing a party from seeking review of the dispute by an Article III district judge as allowed by statute. Second, such authority would frustrate our court's appellate review by putting in place an extra procedural hurdle that respondents would have to surmount in order to receive review. *See* Fed. R. App. P. 21; Ninth Circuit R. 27-1 "Advisory Committee Note".

The dissent nevertheless contends that the constitutional issue raised by our decision is Congress's unconstitutional delegation of authority to the judicial branch. The dissent argues that by allowing the Judicial Council of the Ninth Circuit established the BAP, Congress has impermissibly delegated its court-making authority to the courts. First, Congress did not delegate BAP establishment to the courts–it was delegated to an administrative authority, the Judicial Council of the Circuits. The dissent repeatedly misses this important distinction. It argues Congress gave the power to create the BAP to the court. But this argument is irrelevant. Clearly, this was an administrative responsibility given to an administrative part of our system: the Judicial Council of the Circuits. Second, because it is a temporary entity existing at the option of the Judicial Council of the Circuit, it does not have the same function or power of a court–thus its name as a "panel" created or disbanded by the Judicial Council of the Circuit.

The Supreme Court, in addressing separation-of-powers concerns in cases involving the judicial branch, has explained that there are "two dangers: first, that the Judicial Branch neither be assigned nor allowed tasks that are more properly accomplished by [other] branches, and second, that no provision of law impermissibly threatens the institutional integrity of the Judicial Branch." *Mistretta v. United States*, 488 U.S. 361, 383 (1989) (internal quotations and citations omitted). Our decision does not raise either concern. Congress has not simply delegated all court-making authority to the judicial councils of each circuit. Rather, Congress has allowed judicial councils to take stock of the needs within their circuit, and, based on those conclusions, to establish a panel service that is limited in both the subject matter it can adjudicate and its authority to render final decisions. The

authorization continues only so long as the Judicial Council of the Circuit on its own decides. 28 U.S.C. § 158(b)(2). The Supreme Court has never held, nor has our court, that Congress cannot authorize the judicial councils in each circuit to establish a temporary panel service to adjudicate specific, public rights, such as bankruptcy claims. *See Stern*, 131 S. Ct. at 2609–11 (defining "public rights").

### III.

We therefore overrule *In re Salter* and hold that the BAP is not a "court[] established by Act of Congress" under subsection (a) of the All Writs Act, so it does not have jurisdiction to entertain a mandamus petition. Our decision does not leave parties without recourse to mandamus relief from decisions by a bankruptcy judge, since subsection (a) of the All Writs Act applies to federal district courts. *Sec. & Exch. Comm'n v. G. C. George Secs., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981) (holding that "the district court . . . had the authority to consider [petitioner's] request for relief under the All Writs Act," and observing that "a district court's powers under § 1651 should be broadly construed" (internal quotation marks omitted)).

We vacate the decision of the BAP and remand the case with instructions to dismiss the petition for lack of jurisdiction. Parties shall bear their own costs for the appeal. Fed. R. App. P. 34(a)(4).

**VACATED AND REMANDED.**

BYBEE, Circuit Judge, concurring in the judgment but vigorously disagreeing with everything else:

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The majority holds that the Bankruptcy Appellate Panel may not issue writs of mandamus because it is not a "court[] established by Act of Congress." Maj. Op. at 17. Oh, the majority is willing, I think, albeit begrudgingly, to admit that the BAP is a court; it just doesn't believe that it was "established directly by Act of Congress." That last sentence was, of course, a bit of a cheat on my part: the statute doesn't actually say that the court must be "established *directly*" by Congress. But the majority does. Maj. Op. at 4, 5–6. It has added a word to the All Writs Act that is not there. And, for the reasons I will explain, it is so unnecessary to do so, and it is going to cause us major constitutional headaches.

I just can't go there. I concur in the judgment only, and respectfully dissent otherwise.

I

I am going to start with an observation: even among fly-specks, this case is a nothing. We are dealing with the denial of a writ of mandamus filed by a party with a penchant for repeat (and likely frivolous) bankruptcy filings.[1] And there

---

[1] Ozenne filed some seven bankruptcy cases over the course of five years.

are several ways we could and should have disposed of this case. Here is what happened.

## A. *Procedural History*

"The crux of Ozenne's grievance is that his home was sold out from under him in violation of the bankruptcy stay provisions." Accordingly, several years after his bankruptcy case had been closed out, he sought to reopen it to seek damages for alleged violations of the automatic stay, made in connection with the sale of his home. In 2007, Ozenne filed a motion in the bankruptcy court seeking to "set aside" the bankruptcy court's earlier ruling, which held that under Fed. R. Civ. P. 60, Ozenne could not reopen his case. Ozenne's reason for reopening the bankruptcy case was his reason for all the numerous motions he has filed: to seek "damages under 11 U.S.C. § 362, which allows for damages for violation of a bankruptcy stay." The bankruptcy court denied the motion for lack of jurisdiction, on account of Ozenne's bankruptcy case having been closed for several years at that point. Ozenne appealed that decision to the federal district court, which held that "[t]he bankruptcy court was correct to reject Ozenne's motion," because it was untimely under Rule 60. Ozenne then filed a direct appeal to this court, and a three-judge panel summarily affirmed.

At that point Ozenne filed a ""Motion for Sanctions [for] Violations of 11 USC 362(a)" in the bankruptcy court. In that motion, Ozenne argued that a "recent decision in the 10th Circuit Court of Appeals has ruled that bankruptcy courts retain jurisdiction to hear violations of 11 USC 362, even after the underlying bankruptcy case has been dismissed." In other words, the motion sought the same thing Ozenne has been seeking for years: to reopen his case to determine

whether his home was sold in violation of the automatic stay and to collect damages for it. The bankruptcy court held it had no jurisdiction to grant relief. Ozenne never filed a notice of appeal. Again, another judgment became final.

Ozenne then filed a petition for a writ of mandamus with the BAP. That petition sought an order from the BAP, requiring the bankruptcy court to exercise jurisdiction and hold "a trial or hearing for the violations of law under 11 USC 362." The BAP's docket shows that the petition received no response from the appellees, and the BAP denied it and closed the case out in a matter of eighteen days. In its decision, the BAP noted its authority to entertain writs under the All Writs Act, recited the standard for receiving such relief, but summarily held that Ozenne "has not met the burden to establish that a writ of mandamus should be issued." Ozenne is now before us on a timely filed pro se appeal from that decision.

B. *How the Majority Should Have Handled This*

First, although not entirely free from doubt given Ozenne's pro se briefing, this case is likely res judicata. Ozenne has been doing the same thing for years. He admits it. His own briefing notes that the bankruptcy court "consistently ruled", in "2003, 2007, [and] 2011," that it lacked jurisdiction to reopen Ozenne's case and grant him relief. I see no substantive difference between what Ozenne asked the bankruptcy court to do in his 2007 motion and what he asked it again in his 2011 motion. His 2007 motion ended with a final judgment from this court affirming the district court's determination that Ozenne could not seek the relief he sought—which happens to be the exact relief he sought in his 2011 motion in the bankruptcy court and his subsequent

mandamus petition before the BAP. Assuming that Ozenne's description is correct, he missed the time to file a notice of appeal on the bankruptcy court's denial of his motion. So that determination became final. Indeed, the number of final judgments telling Ozenne "no" is hard to count.[2] His claims strike me as being barred by res judicata.

Second, we might also reach the merits and simply affirm because Ozenne has not even come close to showing that he is entitled to a writ of mandamus. He cites a single BAP case, *In re Johnson*, 346 B.R. 190 (9th Cir. BAP 2006), and that's it. Ozenne has not shown that his "right to the issuance of the writ is clear and indisputable." *DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal.*, 219 F.3d 930, 934 (9th Cir. 2000) (internal quotation marks omitted) (noting that in granting or denying a writ, courts consider whether the petitioner (1) "has no other adequate means, such as a direct appeal, to attain the relief he or she desires," (2) "will be damaged or prejudiced in a way not correctable on appeal," (3) the "district court's order is clearly erroneous as a matter of law," (4) the "district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules," and (5) the "district court's order raises new and important problems, or issues of law of first impression"). This is an equally plausible grounds to affirm.

Finally, as the majority's opinion suggests, the BAP may have lacked jurisdiction. Maj. Op. at 8–9. The BAP's appellate jurisdiction is predicated on the consent of the

---

[2] As the appellees have noted, Ozenne's "unsuccessful appeals of the underlying issues herein included appeals to the BAP, the District Court, twice to the California Court of Appeals, the U.S. Supreme Court which denied *certiorari*, and to this Honorable Court."

parties before it. *See* 28 U.S.C. § 158. And the issuance of a writ under the All Writs Act requires pre-existing jurisdiction. *See* 28 U.S.C. § 1651 (granting power courts to issue "all writs necessary or appropriate *in aide of their respective jurisdictions*" (emphasis added)). But at worst, the facts here suggest that we dismiss this case only because we lack evidence of the appellees' consent, and therefore the BAP did not have jurisdiction to consider *this particular writ*, not *all* writs in general. So under that view, we just dismiss the appeal and all go home.

I would resolve this case on any one of the above bases, and thus I concur in the judgment only, insofar as that judgment is that Ozenne loses his case. But instead of stopping with the most obvious answers to a most obviously meaningless case, the majority forges ahead, without even calling for briefing, and grinds an axe with which to cut the BAP off at the knees. The majority opinion is needless, wrong, and raises serious constitutional concerns with the separation of powers.

## II

The majority labors mightily to avoid making a concession that, if you read carefully, it still winds up making: the BAP is a court. And really, what else can the majority do? The BAP is "composed of bankruptcy judges," 28 U.S.C. § 158(b)(1), serving on a "3-judge panel," *id.* § 158(c)(1). The panel "hear[s] and determine[s] . . . appeals" from "final judgments, orders, and decrees" of bankruptcy courts. *Id.* § 158(a)(1), (b)(1). And if not appealed to us, the BAP's decisions are final and have preclusive effect. *In re Scovis*, 249 F.3d 975, 980 (9th Cir. 2001) ("The BAP renders a final order when it affirms or

reverses a bankruptcy court's final order."). The majority strains credulity when it says that the BAP "does not have the same function or power of a court." Maj. Op. at 16. Of course it does. In its appellate function, the "bankruptcy appellate panel . . . fill[s] the role of the [federal] district courts."[3] *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 252 (1992); *see also* 28 U.S.C. § 158(a) (providing for appellate jurisdiction of federal district courts over bankruptcy decisions as an alternative to the BAP); *Wellness Intern. Network v. Sharif*, 135 S. Ct. 1932, 1946 (2015) ("Congress has supplemented the capacity of district courts through the able assistance of bankruptcy judges."); *Northern Pipeline Constr. v. Marathon Pipe Line Co.*, 458 U.S. 50, 55 (1982) (plurality opinion).

The majority scrupulously avoids addressing any of these realities. Instead, like uttering "Bibbidi-Bobbidi-Boo" to turn pumpkins into carriages, the majority believes that its own incantation ("panel service" and "tribunal") will transform the BAP into something other than a court. I readily concede that § 158 calls the BAP a "panel service." But if the majority believes the BAP is not a court, it never says so. Indeed, if the majority really thought the BAP was not a court at all, it could have written a much shorter opinion, because under the All Writs Act only "*courts* . . . may issue all writs necessary

---

[3] For instance, the majority says the BAP's decisions are "not binding." Maj. Op. at 14. Obviously they are not binding on Article III courts; but that is beside the point. The ability to bind another court is not the hallmark of a "court," otherwise our federal district courts would not be "courts," as their decisions are similarly not binding. *See Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001). What matters for purposes of whether the BAP is a "court" is whether it issues judgments that *bind the parties*. The majority's response on this point is conspicuously absent.

or appropriate." 28 U.S.C. § 1651(a) (emphasis added). Had the majority simply declared the BAP not a court, it could have saved itself the gymnastics over the word "establish" in § 158.

I am skeptical that the absence of the magic word "court" is significant here. Like the Tax Court—another Article I court—the BAP's "function and role in the federal judicial scheme closely resemble those of the federal district courts, which indisputably are 'Courts of Law.'" *Freytag v. Comm'r*, 501 U.S. 868, 891 (1991). The power the BAP wields under § 158 is not that exercised by some mere tribunal or administrative adjunct, like a special master or an arbitrator. The BAP is an alternative to federal district courts for parties appealing from the bankruptcy courts. 28 U.S.C. § 158(b)(1), (c)(1); *see also Wellness*, 135 S. Ct. at 1946; *Conn. Nat'l Bank*, 503 U.S. at 252. By statute, appeals heard by the BAP "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals." 28 U.S.C. § 158(c)(2). Our own appellate jurisdiction is the same whether the appeal originates in "the bankruptcy court, the district court, or the bankruptcy appellate panel." 28 U.S.C. § 158(d)(2)(A). In all respects, the BAP is treated by the statutes as equal in authority to the district court and greater in authority to the bankruptcy court. *See, e.g.*, *id.* § 158(d)(2)(B), (D); Pub. L. No. 109-8, Title XII, § 1233(b)(3)(A), (5)(A), (6), 119 Stat. 23, *cited in* 28 U.S.C. § 158 note. The one noticeable difference between these courts' jurisdiction is that the consent of the parties is required to establish BAP jurisdiction. But the majority cannot, by its repeated references to the consent aspect of BAP jurisdiction, seriously mean that the bankruptcy courts, for example, cease to be "courts" when their Article III jurisdiction to adjudicate non-core proceedings hinges on the

consent of the parties. *See Wellness*, 135 S. Ct. at 1944; *cf. Roell v. Withrow*, 538 U.S. 580, 585–86 (2003) (noting the consent-based civil jurisdiction of the United States magistrate judges to dispose of cases and enter final judgment). Is the majority suggesting, sub silentio, that the bankruptcy courts are unconstitutional?

The majority similarly cannot dodge the fact that the BAP is a court by telling us that it has "none of the permanency of a court." Maj. Op. at 5. "Permanency" as an attribute inherent to a "court" is beyond me, in part because I do not know what the majority means by "permanency." Does it mean populated by life tenured judges? If so, then Article I courts are not courts. Does it mean constitutionally permanent? If so, then only the Supreme Court is a court, *see* U.S. Const. art. III, § 1; we don't even count because we are good only so long as Congress says so, *see* 28 U.S.C. §§ 1291–1296 (establishing the jurisdiction of the courts of appeals). The thing is, permanency is relative and tells us little to nothing about whether a body is properly a "court." The Temporary Emergency Court of Appeals was not permanent and was not meant to be. *See* Economic Stabilization Act Amendments of 1971, Pub. L. No. 92-210, § 211, 85 Stat. 743 (creating the Temporary Emergency Court of Appeals, to be populated by district and circuit judges appointed at will by the Chief Justice); Act of October 29, 1992, Pub. L. No. 102-572, § 102, 106 Stat. 4506 (abolishing the Temporary Emergency Court of Appeals). But it was a court nevertheless. The same can be said of the original Emergency Court of Appeals established during World War II, *see* Emergency Price Control Act, Pub. L. No. 77-421, § 204, 56 Stat. 23, 31 (1942), and three-judge district courts (which literally last for only the duration of a lawsuit), 28 U.S.C. § 2284, and state courts with judges sitting pro tem,

*see, e.g.*, Cal. Const. art. 6, § 21; Okla. Const. art. 7-A, § 6; Ind. Code § 33-31-1-12; Kan. Stat. Ann. § 20-310a; Wash. Rev. Code. § 2.08.180.

The point is, what you call an adjudicative body and how long it exists are much less indicative of whether that body is a "court" than what the body actually does and the powers it possesses. By the latter standard, the BAP is a court.

## III

The All Writs Act provides that "courts established by Act of Congress" may issue appropriate writs, such as a writ of mandamus. 28 U.S.C. §1651(a). When Congress provided for bankruptcy appellate panels, it provided that "[t]he judicial council of a circuit shall establish a bankruptcy appellate panel service . . . unless the judicial council finds" that the circuit has insufficient judicial resources or the service would result in undue delay or increase the cost of appeal to parties. *Id.* § 158(b)(1). The majority concludes that because of the "unless" clause, Congress did not "establish" the BAP and, accordingly, the BAP is not a "court established by Act of Congress," but "a tribunal created by the independent actions, choices, or judgment of a third party." Maj. Op. at 7.

The text of § 158 and the All Writs Act should be sufficient to decide this issue. The BAP is plainly a court established by an Act of Congress. Section 158 authorizes us, through our judicial council, to populate the BAP. The flexibility Congress gave us *not* to populate the BAP if our peculiar circumstances dictate otherwise does not affect the fact that the court we appoint draws its existence from congressional authorization and direction. Our choice to

effect or not to effect the panel authorized by Congress does not change the fact that the court was created by "Act of Congress." And that is all that the All Writs Act demands. The BAP is a court created by an Act of Congress and may, in cases where it otherwise has jurisdiction, issue writs under the All Writs Act. *See In re Salter*, 279 B.R. 278, 280–81 (9th Cir. BAP 2002).

The majority, because of a vague concern that the definition of "established" would open up the writ power to "any tribunal that receives any kind of federal funding or authorization," Maj. Op. at 6–7, proceeds to graft a new qualifier onto the All Writs Act—that the court be "directly" established by Act of Congress, *id.* at 7, 10. I do not see that word anywhere in the All Writs Act, and would accordingly decline to write it into the statute. Moreover, the majority's concern is unfounded. "The All Writs Act . . . is not an independent grant of appellate jurisdiction," 16 Charles Alan Wright et al., Federal Practice & Procedure § 3932, at 470 (2d ed. 1996), but is instead auxiliary in nature in aiding courts to exercise their *already-existing* jurisdiction. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175 (1803); *see also In re Previn*, 204 F.2d 417, 418 (1st Cir. 1953). That means that the jurisdiction of any court must be established and pre-existing before it can issue an extraordinary writ. This, along with the fact that only *courts* can use the All Writs Act, *see* 28 U.S.C. § 1651(a), diminishes any concern the majority may be harboring about nameless federal tribunals using the writ power.

Finally, the majority says its "decision does not leave parties without recourse to mandamus relief from decisions by a bankruptcy judge, since subsection (a) of the All Writs Act applies to federal district courts." Maj. Op. at 17. This

is hollow consolation indeed. Today's ruling neuters the BAP. Section 158 allows the parties to choose to have an appeal heard in front of the BAP. *See* 28 U.S.C. § 158(b), (c), (d). But buyer beware. The Supreme Court can issue writs under the All Writs Act, 28 U.S.C. § 1651(a), and so can we, *see Cal. Energy Comm'n v. Johnson*, 767 F.2d 631, 634 (9th Cir. 1985), as can the district courts, *SEC v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981), as can *the bankruptcy courts themselves*, *Nat'l Bank of Ark. v. Panther Mountain Land Dev., LLC (In re Panther Mountain Land Dev., LLC)*, 686 F.3d 916, 926 (8th Cir. 2012); *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 972 n.24 (11th Cir. 2012); *In re Johns-Manville Corp.*, 27 F.3d 48, 49 (2d Cir. 1994). But for reasons never fully explained by the majority, Congress purportedly left the BAP out in the cold. Every other court that can adjudicate the parties' claims in a bankruptcy case, except the BAP, can issue a writ in furtherance of its already-existing jurisdiction to issue stays, injunctions, and orders enforcing its own judgments. Under the majority's view, Congress has established, in Justice Scalia's memorable phrase, "a sort of junior-varsity [court]," vested with some, but not all, of the ordinary powers of a court. *United States v. Mistretta*, 488 U.S. 361, 427 (1989) (Scalia, J., dissenting). I doubt the majority is correct.

IV

The majority's opinion begs an answer to the following question: if the BAP is not "a 'court *established by Act of Congress*,'" Maj. Op. at 5–6 (emphasis added), then who, precisely, "established" this court?

If we accept the majority's analysis, the BAP was "established by the Judicial Council of the Ninth Circuit."

Maj. Op. at 5–6. This presents us with a second, far more troubling question: Can Congress delegate its power to create courts to the judicial branch? The majority says that the answer is "yes," and sees no problem. *See* Maj. Op. at 4 ("Congress gave the judicial council of each circuit discretion to establish a bankruptcy appellate panel service."); *id.* at 7 (concluding that "the BAP was created by the Judicial Council of the Ninth Circuit" through an "authoriz[ation]" from Congress). I am deeply skeptical of the constitutionality of such an arrangement between Congress and the Judiciary.

First, we have no independent power under Article III to create inferior courts. We are vested only with the "judicial Power of the United States," U.S. Const. art. III, § 1, and the "judicial Power of the United States" does not encompass the power to create other courts. It is the power to adjudicate certain "Cases" and "Controversies" that arise between adverse parties, "with such Exceptions, and under such Regulations as the Congress shall make." *Id.* art. III, § 2, cls. 1, 2; *see also Muskrat v. United States*, 219 U.S. 346, 356 (1911) ("Judicial power, . . . is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." (internal quotation marks omitted)); *Durousseau v. United States*, 10 U.S. (6 Cranch) 307, 314 (1810) ("The appellate powers of the court . . . are given by the constitution. But they are limited and regulated by the judicial [act], and by such other acts as have been passed on the subject."). By contrast, Articles I and III expressly grant the power to establish courts to Congress. U.S. Const. art. I, § 8, cl. 9 ("The Congress shall have Power . . . To constitute Tribunals inferior to the supreme Court."); *id.* art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from

time to time ordain and establish."). The distinction between, and classification of, Article III and Article I courts—also denominated "constitutional" and "legislative" courts—"has been productive of much confusion and controversy." *Glidden Co. v. Zdanok*, 370 U.S. 530, 534 (1962) (plurality opinion). But whatever the constitutional disconnect between those two systems of courts, *we* have no power to establish a bankruptcy court.[4]

---

[4] There is, to take the example at hand, more than a little confusion over the constitutional source of Congress's power to establish the bankruptcy courts. There are at least three theories, all of which have been rejected by at least some part of the Court. First, some have argued that Congress may rely on Article I to establish "Tribunals inferior to the Supreme Court." U.S. Const. art I, § 8, cl. 9. But a plurality of the Court has said that this provision "plainly relates to the 'inferior Courts' provided for in Art. III, § 1; it has never been relied on for establishment of any other tribunals." *Glidden Co. v. Zdanok*, 370 U.S. 530, 543 (1962) (plurality opinion). Second, others have argued that Congress derives its authority from the power to "establish . . . uniform Laws on the subject of Bankruptcies." U.S. Const. art. I, § 8, cl. 4. However, a plurality of the Supreme Court may have rejected that clause as a source of power for creating bankruptcy courts, though it has not squarely addressed the issue. *Northern Pipeline Constr. v. Marathon Pipe Line Co.*, 458 U.S. 50, 72–74 (1982) (plurality opinion). *But see Wellness Int'l Network, LTD. v. Sharif*, 135 S. Ct. 1932, 1970 n.7 (Thomas, J., dissenting) (noting that the *Northern Pipeline* plurality was "considering whether Article III imposes limits on Congress' bankruptcy power," *not* "whether Congress has the power to establish bankruptcy courts as an antecedent matter"). Third, the Court has denied that Congress can establish bankruptcy courts as an "adjunct" to Article III courts, presumably relying on some combination of Article III, § 1, and the Necessary and Proper Clause, Article I, § 8, cl. 18. *See Stern v. Marshall*, 131 S. Ct. 2594, 2619 (2011) (noting bankruptcy judges' ability to enter final judgments and concluding that "[g]iven that authority, a bankruptcy court can no more be deemed a mere 'adjunct' of the district court than a district court can be deemed such an 'adjunct' of the court of appeals."); *see also Northern Pipeline*, 458 U.S. at 76–87 (plurality opinion).

In response, the majority criticizes my premise.  It concludes that "Congress did not delegate BAP establishment to the courts—it was delegated to an administrative authority, the Judicial Council of the Circuits."  Maj. Op. at 16.  In separation-of-powers terms, this is not an "important distinction," *id.*; it is a distinction without a difference.  The Supreme Court has made abundantly clear that its separation of powers "approach" does not differ as applied to "nonadjudicatory activities that Congress has vested *either* in federal courts *or in auxiliary bodies within the Judicial Branch*." *Mistretta*, 488 U.S. at 388 (emphasis added).  If the majority wants to argue that the Judicial Council is not located in the Judicial Branch, it is paddling upstream.

The second problem with the delegation of power the majority assumes is that it is unprecedented.  To my knowledge, there is no instance of Congress delegating its court-making power *to the courts*; we have been afforded other powers, but not the power to establish courts.  Through the Rules Enabling Act, 28 U.S.C. §§ 2071–77, Congress has delegated to us rule-making authority over "the practice and procedure of federal courts." *Sibbach v. Wilson*, 312 U.S. 1, 9–10 (1941) (holding that Congress has the "undoubted power" to delegate that authority); *Wayman v. Southard*, 23 U.S. (10 Wheat) 1, 43 (1825) (noting that rule-making authority with respect to judicial proceedings may be "conferred on the judicial department" by Congress).  Those rules, however, "may not expand or diminish the jurisdiction conferred by Congress." *United States v. Jacobo Castillo*,

---

We need not wade into this morass.  It is sufficient to note that, whatever the source (or not) of *Congress's* authority to establish bankruptcy courts, the Constitution does not vest any such authority in the judiciary.

496 F.3d 947, 954 (9th Cir. 2007) (en banc). Nor may we draw on our authority to appoint bankruptcy judges as the source of power for establishing a bankruptcy appellate panel. Our power to appoint "inferior Officers" is conferred by Article II and authorized by statute. U.S. Const. art. II, § 2, cl. 2; 28 U.S.C. § 152(a)(1). Accordingly, we can only appoint such officers to existing offices, statutorily created by Congress. *See Edmond v. United States*, 520 U.S. 651, 660 (1997) (noting that the Appointments Clause permits Congress to vest the appointment power for inferior officers in the courts "*by Law*" (quoting U.S. Const. art. II, § 2, cl. 2) (emphasis added)). To take an even a more extreme example, the Court approved the delegation involved in the power to issue the Sentencing Guidelines by reference to our historical involvement in the discretion-laden field of criminal sentencing. *See Mistretta*, 488 U.S. at 390 (noting, in order to justify the location of the Sentencing Commission within the Judicial Branch, that "the sentencing function long has been a peculiarly shared responsibility among the Branches of Government" and that for "more than a century, federal judges have enjoyed wide discretion" in sentencing). But there is no history of courts making other courts. And while novelty is not a death knell, it is no ringing endorsement of constitutionality either. *See Free Enter. Fund v. Public Co. Accounting Oversight Bd.* (*PCAOB*), 561 U.S. 477, 505 (2010) ("Perhaps the most telling indication of the severe constitutional problem with the PCAOB is the lack of historical precedent for this entity." (internal quotation marks omitted)).

Third, even if I thought Congress had delegated its authority to establish courts to us, we could not accept the delegation. The Supreme Court has held that Congress may delegate "extrajudicial activities" to the Judiciary only if the

delegated task has a "close relation to the central mission of the Judicial Branch," is not a "task[] . . . more properly accomplished by [other] branches," and does "not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388, 389–90 (quoting *Morrison v. Olson*, 487 U.S. 654, 680–81 (1988)). I am unpersuaded these requirements would be met by a congressional delegation of court-making power to the Judiciary. To begin with, I fail to appreciate how court-creation has a "close relation to the central mission of the Judicial Branch." Our mission is to interpret the law in resolving disputes between parties, not to enlarge the superstructure of government. The gap between promulgating rules of procedure, appointing Article I judges, or propounding sentencing guidelines applicable in judicial proceedings on the one hand, and creating new tribunals that possess the power to issue final judgments on the other hand, is as obvious as it is wide. Moreover, there are plenty of reasons to conclude that creating courts is "more properly accomplished" by Congress, and that we "trench upon" Congress's prerogatives in this case by reading § 158 as delegating to the Judiciary the power to establish the BAP. The separation of powers under our Constitution prohibits one branch from usurping the powers of another or giving away its power to check another Branch. *United States v. Nixon*, 418 U.S. 683, 704 (1974) ("[T]he 'judicial Power of the United States' . . . can no more be shared with the Executive Branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto."); *see also Stern v. Marshall*, 131 S. Ct. 2594, 2611–15 (2011) (permitting Article I bankruptcy courts to adjudicate defamation claims violated separation of powers); *PCAOB*, 561 U.S. at 497 (dual-layer of for-cause protection over agency board members violated separation of powers);

*Clinton v. City of New York*, 524 U.S. 417, 435–49 (1998) (line-item veto); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 225–26 (1995) (statute revising final judgment made by Article III courts); *Bowsher v. Synar*, 478 U.S. 714, 732–34 (1986) (placing executive power in official removable only by Congress); *INS v. Chadha*, 462 U.S. 919, 954–59 (1983) (congressional override of executive execution of the law); *Northern Pipeline*, 458 U.S. at 63–76 (plurality opinion) (placement of judicial power over private rights outside of Article III courts); *Buckley v. Valeo*, 424 U.S. 1, 126–29 (1976) (giving appointment power to Speaker of the House and president pro tem of the Senate).

As I previously explained, the jurisdiction and existence of both Article I and III lower courts depends "entirely on statutory grants from Congress." *Evans v. Thompson*, 518 F.3d 1, 5 (1st. Cir. 2008); *see also Printz v. United States*, 521 U.S. 898, 907 (1997) ("In accord with the so-called Madisonian Compromise, Article III, § 1, established only a Supreme Court, and made the creation of lower federal courts optional with the Congress—even though it was obvious that the Supreme Court alone could not hear all federal cases throughout the United States."); *Palmore v. United States*, 411 U.S. 389, 400–01 (1973) ("The decision with respect to inferior federal courts, as well as the task of defining their jurisdiction, was left to the discretion of Congress."); *Cary v. Curtis*, 44 U.S. (3 How.) 236, 245 (1845) ("[Congress] possess[es] the sole power of creating the tribunals (inferior to the Supreme Court) for the exercise of judicial power . . . and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good."). In my view, this places Congress's Article I and III court-creating powers on a special plane in separation of powers terms: The power to create inferior

courts and define their jurisdiction is perhaps the principal check that Congress possesses over the judiciary. Congress may not delegate that power outside of itself, and it is no answer that the judiciary is complicit in its exercise. *PCAOB*, 561 U.S. at 497 ("[T]he separation of powers does not depend . . . on whether 'the encroached-upon branch approves the encroachment[.]'" (quoting *New York v. United States*, 505 U.S. 144, 182 (1992)); *Wellness*, 135 S. Ct. at 1955 (Roberts, C.J., dissenting) ("A branch's consent to a diminution of its constitutional powers . . . does not mitigate the harm or cure the wrong.").

The majority responds with a non sequitur, contending my approach "ignores the BAP's historically subordinate role within the federal judiciary." Maj. Op. at 11. Not so. I agree that the bankruptcy courts (including the BAP, which is a *court*) "derive[] [their] legitimacy from the overview exercised by Article III courts." Maj. Op. at 15. But I do not see how Congress's decision to permit the BAP to use the writ power "chip[s] away at the authority of the Judicial Branch." Maj. Op. at 15. Does the majority really believe that Congress could not amend the All Writs Act to include the BAP by name without offending Article III? Surprisingly, the majority has expressed no concern with bankruptcy courts invoking the All Writs Act. Surely *they* are "courts" established by act of Congress. *See Panther Mountain*, 686 F.3d at 926 (holding that bankruptcy courts can issue writs under the All Writs Act); *Alderwoods Group*, 682 F.3d at 972 n.24 (same); *In re Johns-Manville Corp.*, 27 F.3d at 49 (same). But perhaps not under the majority's ruling. And to the extent the majority is concerned about "frustrat[ing] our court's appellate review" of BAP decisions, Maj. Op. at 15, the majority needs reminding that it is *vacating* the BAP's order. There is little more that could

demonstrate that the BAP remains "subordinate" to us.  Maj.
Op. at 11.

I do not purport to solve these interesting constitutional
quandaries raised by the majority's opinion.    But the
majority's opinion is a problem.  And the questions are both
squarely raised and, unfortunately, entirely avoidable.  We
can and should avoid rendering a decision that radiates with
such constitutional difficulty.

V

It is a basic tenet of both statutory interpretation and
constitutional law that "where an otherwise acceptable
construction of a statute would raise serious constitutional
problems," we must "construe the statute to avoid such
problems."  *Edward J. DeBartolo Corp. v. Fla. Gulf Coast
Bldg. & Constr. Trade Council*, 485 U.S. 568, 575 (1988).
This principle alone would counsel against the majority's
construction of the All Writs Act.  But the constitutional
avoidance canon only applies when there are two plausible
readings of a statute.  *McFadden v. United States*, 135 S. Ct.
2298, 2307 (2015).  "It has no application in the interpretation
of an unambiguous statute such as this one."  *Id.* (internal
quotation marks omitted).  There is no reason to read into the
All Writs Act the word "directly."  Congress established
bankruptcy appellate panels, and authorized us to adapt them
to our needs.    When Congress established the BAP it
necessarily authorized the BAP to "issue all writs necessary
or appropriate in aid of [its] respective jurisdiction[] and
agreeable to the usages and principles of law."  28 U.S.C.
§ 1651(a).

I respectfully, but emphatically, dissent.